## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN DANIELS,

   Plaintiff,

  v.

KEVIN KAUFFMANN, *et al.*,

   Defendants.

No. 3:20-CV-0442

(Chief Judge Brann)

## MEMORANDUM OPINION

### DECEMBER 15, 2021

Plaintiff Shawn Daniels, who was previously incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania (SCI Huntingdon), during times relevant to this lawsuit, filed this *pro se* Section 1983[1] action in March 2020. Daniels asserts constitutional tort claims under the Eighth Amendment regarding his conditions of confinement and under the First Amendment for retaliation. Presently pending is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.[2]  Because Daniels failed to exhaust his administrative remedies for his Section 1983 claims, the Court must grant Defendants' Rule 56 motion.

---

[1]  42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]  Doc. 58.

## I.   FACTUAL BACKGROUND[3]

Daniels' Section 1983 claims primarily arise from his incarceration in the

"Diversionary Treatment Unit" (DTU) from July to December 2018 while at SCI

Huntingdon.[4]  He names the following defendants in his complaint: then-

Superintendent Kevin Kauffman and Corrections Officers John Merritt, Matthew

Henry, Cody Myers, Joseph Cherry, Kayla Parks, and Thaddeus Sprankle.[5]

Daniels alleges that, while incarcerated in the DTU, Merritt, Henry, Myers,

Cherry, Parks, and Sprankle frequently denied him meals and denied his requests

to take showers; that Merritt, Henry, Myers, Cherry, and Parks issued false

misconduct reports to keep him in the DTU in retaliation for Daniels' grievances

and civil litigation against them; that Meritt, Henry, Myers, Parks, and Sprankle

stole court documents and legal materials from his cell; and that Cherry poured his

---

[3]   Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.*  Unless otherwise noted, the following factual background derives from the parties' Rule 56.1 statements of material facts. *See* Docs. 59, 65, 66.  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the Court cites directly to the Rule 56.1 statements.

[4]   Doc. 59 ¶¶ 2-3.

[5]   Daniels did not provide Defendants' full names in his complaint and misspelled some of their last names; the Court will use the correct spellings as provided by Defendants. *See* Doc. 15. Daniels also sued Deputy "Scot Waters," (identified by defense counsel as William Scott Walters), but the claims against Walters were dismissed at the Rule 12(b)(6) stage. *See* Doc. 28 at 3-4.

tobacco spit into Daniels' feeding aperture to infect Daniels with Hepatitis C.[6]

Daniels further contends that Kauffman was made aware of these ongoing

constitutional violations but took no action to curb the abuse.[7]  In a separate filing

that appears to be part of the complaint, Daniels claims that—prior to his detention

in the DTU—he was subjected to unsanitary conditions in his cell caused by

insufficient plumbing.[8]  Finally, at two separate places in his pleadings, Daniels

asserts a state-law claim for intentional infliction of emotional distress (IIED)

against the six corrections officers.[9]

Defendants first sought partial dismissal of Daniels' complaint.  On August

24, 2020, the Court dismissed Daniels' claims for monetary damages against all

defendants in their official capacities as barred by the Eleventh Amendment,

dismissed Daniels' claims for declaratory and injunctive relief as moot, and

dismissed defendant Walters based on lack of personal involvement.[10]  Following

discovery, Defendants now move for summary judgment on all remaining federal

claims, arguing that Daniels' failure to exhaust his administrative remedies

---

[6]   Doc. 1 at 3, 5, 7, 9, 11-14; Doc. 3 at 2, 5; Doc. 4 at 2-7.
[7]   Doc. 1 at 2; Doc. 3 at 6; Doc. 27 at 1.
[8]   *See* Doc. 3 at 7-9.  This claim is directed at Kauffman and Walters but, as noted *supra*, Walters has been dismissed from this litigation.  The Court further observes that Daniels does not press this claim at the Rule 56 stage; rather, he repeatedly asserts that his lawsuit concerns only his time in the DTU from July to December 2018.  *See* Doc. 63 at 4, 6, 10, 11; Doc. 65 at 3-5; Doc. 66 at 2.
[9]   *See* Doc. 1 at 12; Doc. 4 at 8.
[10]  Doc. 28 at 3.

completely bars his Section 1983 claims.[11]  Defendants' Rule 56 motion is fully briefed and ripe for disposition.

## II.    STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[12]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[14]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[15]  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[16]  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving

---

[11]  *See generally* Docs. 58, 60.  In their Rule 56 motion, Defendants alternatively seek "dismissal" of the official-capacity claims but, as mentioned, those claims have already been dismissed.

[12]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[13]  FED. R. CIV. P. 56(a).

[14]  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (*quoting Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[15]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[16]  *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

party on the claim or claims at issue.[17]  A "scintilla of evidence" supporting the

nonmovant's position is insufficient; "there must be evidence on which the jury

could reasonably find for the [nonmovant]."[18]  Succinctly stated, summary

judgment is "put up or shut up time" for the nonmoving party.[19]

## III.   DISCUSSION

Defendants move for summary judgment, contending that Daniels failed to

fully exhaust his administrative remedies as to any of his Eighth or First

Amendment claims.  Daniels maintains that he sufficiently exhausted his claims

and that any administrative default should be excused.

The Prison Litigation Reform Act of 1995 (PLRA)[20] requires prisoners to

exhaust available administrative remedies before suing prison officials for alleged

constitutional violations.[21]  Proper exhaustion is mandatory, even if the inmate is

seeking relief—like monetary damages—that cannot be granted by the

administrative system.[22]  The exhaustion process a prisoner must follow is

governed by the contours of the prison grievance system in effect where the inmate

---

[17]  *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

[18]  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).

[19]  *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

[20]  42 U.S.C. § 1997e *et seq*.

[21]  *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).

[22]  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

is incarcerated.[23]

Pennsylvania's Department of Corrections (DOC) employs a three-step grievance process that must be completed to properly exhaust administrative remedies.[24]  If informal resolution attempts do not resolve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based."[25]  An adverse decision by the grievance coordinator may be appealed to the Facility Manager within 15 working days of the initial-review response or rejection.[26]  Finally, the decision of the Facility Manager may be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision.[27]

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner

---

[23]   *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.

[24]   *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T OF CORRECTIONS, INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").

[25]   DC-ADM 804 § 1(A)(3)-(5).

[26]   *Id.* § 2(A)(1).

[27]   *Id.* § 2(B)(1).

"identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court."[28]

According to DOC records provided by both parties, Daniels filed more than a dozen grievances during his time in the DTU at SCI Huntingdon.[29]  Copies of some of those grievances have been provided by the parties and are contained in the Rule 56 record.[30]

The insurmountable problem for Daniels is that he cannot establish that *any* of the grievances he filed relevant to the instant case were fully exhausted.  Daniels has not submitted copies of any first-level appeals to the Facility Manager, let alone final appeals to the SOIGA.  Kerri Moore, the Assistant Chief Grievance Review Officer, likewise confirms that she reviewed the SOIGA's files for grievances appealed by Daniels and determined that (1) the SOIGA "does not have any documentation of any grievances filed by" Daniels, and (2) Daniels' grievance history "indicates that he did not exhaust any grievances related to his time at SCI Huntingdon."[31]  Finally, Daniels himself admitted in his deposition that he understood the grievance process (including appeal procedures) but did not pursue

---

[28]  *Id.* § 1(A)(11).
[29]  *See* Doc. 64 at 3; Doc. 68-2 at 42-43.
[30]  *See* Doc. 3 at 17-20; Doc. 64 at 4; Doc. 66 at 4-5.  The numbers of the grievances provided are 749830, 767319, 767323, 772206, and 772619.
[31]  Doc. 68-2 at 2, 6 ¶¶ 1, 2, 21-23.

any of the relevant grievances to final appeal.[32]

Daniels attempts to save his claims by arguing that Defendants were aware of his grievances and that any procedural default should be excused. Neither argument is persuasive.

Daniels first appears to contend that administrative exhaustion is satisfied so long as prison officials are aware of the grievances filed against them. It is true that DC-ADM 804 requires a prisoner to identify individuals involved in the event so that the claim can be investigated and the alleged wrongful actor(s) put on notice.[33] It is likewise true that, in limited circumstances, failure to name a defendant in a grievance can be excused.[34] But the deficiency Defendants identify is larger than just failing to provide adequate notice to a particular prison official— it is the complete absence of evidence that Daniels ever fully exhausted *any* of his grievances related to this Section 1983 lawsuit.

Daniels also contends—without any evidence—that he appealed some of his grievances but received "no answer."[35] Such bare, unsupported contentions are insufficient at the Rule 56 stage; a plaintiff cannot rest on mere allegations when

---

[32] Doc. 68-1, Daniels Dep. 27:5-28:1, 43:6-44:22.

[33] *See* DC-ADM 804 § 1(A)(11)(b); *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004).

[34] *See Spruill*, 372 F.3d at 234-35 (excusing failure to name defendant because grievance officer's initial review identified defendant and thus acknowledged he was "fairly within the compass of the prisoner's grievance").

[35] Doc. 65 at 4; *see also* Doc. 63 at 8.

defending against a motion for summary judgment.[36]  Permitting an inmate to overcome a motion for summary judgment with mere unsubstantiated allegations of a prison's failure to follow DC-ADM 804 guidelines would eviscerate the administrative exhaustion requirement of the PLRA.

In sum, Daniels has provided no evidence that he fully complied with the DOC's administrative exhaustion regime.  Nor has he established that his administrative deficiencies were waived by prison officials or should be excused.  The Court is thus required to grant Defendants' motion for summary judgment on Daniels' procedurally defaulted Section 1983 claims.[37]

## IV.   CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion (Doc. 58) for summary judgment.[38]  An appropriate Order follows.


BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[36]  *See Celotex Corp.*, 477 U.S. at 324.
[37]  *See Spruill*, 372 F.3d at 222, 230.
[38]  To the extent that Daniels' complaint adequately states a claim for intentional infliction of emotional distress under Pennsylvania law, the Court declines to exercise supplemental jurisdiction over that remaining state-law claim.  *See* 28 U.S.C. § 1367(c)(3).